DAYTON PRESS, INC., APPELLANT, *v.* LINDLEY, TAX COMMR., APPELLEE.

[Cite as Dayton Press, Inc. *v.* Lindley (1986), 22 Ohio St. 3d 112.]

(No. 85-438—Decided February 19, 1986.)

*Porter, Wright, Morris & Arthur* and *Ted B. Clevenger,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Mark A. Engel,* for appellee.

*Stanley J. Bowers, Baker & Hostetler, Kiehner Johnson* and *Edward J. Bernert,* urging reversal for *amicus curiae,* Printing Industry of Ohio.

WRIGHT, J. This case involves this court's initial review of R.C. 5739.01(E)(8) which grants a sales tax exemption to items used or consumed in the production of printing matters.[1] We have previously re-

---

[1] R.C. 5739.01(E) provides:

" 'Retail sale' and 'sales at retail' include all sales except those in which the purpose of the consumer is:

" * * *

"(2) To incorporate the thing transferred as a material or a part, into tangible personal property to be produced for sale by manufacturing, assembling, processing, or refining or to use or consume the thing transferred directly in the production of tangible personal property, except printed, imprinted, overprinted, lithographic, multilithic, blueprinted, photostatic, or

viewed the manufacturing exception in what is now R.C. 5739.01(E)(2) in *R. R. Donnelley & Sons Co.* v. *Porterfield* (1972), 30 Ohio St. 2d 219 [59 O.O.2d 260]. In *Donnelley* we held that items used in the composing room and in the operation of offset plate making were subject to tax on the premise that such items were consumed prior to commencement of the actual press work.

Following the announcement of *Donnelley*, the General Assembly amended R.C. 5739.01(E), removing printing from the manufacturing exception, omitting direct use as a limitation to taxation, and adding the phrase "production and preparation in suitable condition for market and sale" to delineate the excepted functions relating to printed matter. The Tax Commissioner suggests that these amendments had no effect on the vitality of *Donnelley*. This posture is plainly untenable.

We hold that tangible personal property used or consumed during the preparation and production for market and sale of printed matter is excepted from Ohio sales tax pursuant to R.C. 5739.01(E)(8). Likewise, the unloading and storing of raw materials, transportation thereof and the printing of the paper along with the binding and shipping of the final product constitute continuous activities necessary for the preparation for market and sale. To hold that the purchase of tangible personal property used or consumed during the aforementioned process should be subject to sales tax would simply repeal a clear-cut legislative mandate.

We should always give language contained in a statute involving taxation its plain and ordinary meaning. See *Youngstown Club* v. *Porterfield* (1970), 21 Ohio St. 2d 83, 86 [50 O.O.2d 198]. "Production" as used by the General Assembly encompasses four major steps as it relates to printed matter. The first involves art and copy preparation; the second involves conversion of the copy into a printing image; the third consists in the press work; and the fourth and final step involves binding and finishing. Strauss, The Printing Industry (1967), at 43. Thus, we must hold that this aspect of the decision of the BTA is contrary to law and must be reversed.

Dayton Press next argues that the BTA erred in its treatment of Dayton Press' acquisition of certain systems involving rail cars, oil piping, waste oil storage tanks and propane tanks. The Tax Commissioner con-

---

other productions or reproductions of written or graphic matter, for sale by manufacturing, processing, refining, or mining, including without limitation the extraction from the earth of all substances which are classed geologically as minerals, production of crude oil and natural gas, farming, agriculture, horticultural, or floriculture, and persons engaged in rendering farming, agricultural, horticultural, or floricultural services, and services in the exploration for, and production of, crude oil and natural gas, for others are deemed engaged directly in farming, agriculture, horticulture, and floriculture, or exploration for, and production of, crude oil and natural gas; or directly in making retail sales or directly in the rendition of a public utility service, except that the sales tax levied by section 5739.02 of the Revised Code shall be collected upon all meals, drinks, and food for human consumption sold upon Pullman and railroad coaches;

"* * *"

cedes that the board simply failed to determine whether these systems were incorporated into the taxpayer's realty. While there may be merit to the argument that these systems were incorporated into improvements of appellant's realty,[2] we must remand this matter to the board for determination in accordance with the practice endorsed in *Towmotor Corp.* v. *Lindley* (1981), 66 Ohio St. 2d 53 [20 O.O.3d 43].

Thus, the decision of the BTA is reversed in part and the cause is remanded in part for further proceedings.

*Judgment accordingly.*

SWEENEY, HOLMES, C. BROWN and DOUGLAS, JJ., concur.

CELEBREZZE, C.J., and LOCHER, J., dissent.

CELEBREZZE, C.J., dissenting. The majority has construed R.C. 5739.01(E)(8) so as to create a virtually limitless exception from the Ohio sales tax for Dayton Press and other members of the printing industry.

R.C. 5739.01(E)(8) does create an exception for items used or consumed in the production and preparation for market and sale of printed matter. It does not, contrary to the thrust of the majority opinion, create an exception for those items which are used only in pre- or post-production of printed matter.

If one looks at the items assessed as taxable by the commissioner in the instant case, it is apparent that many of these items were not used or consumed during production or preparation for sale but rather were merely supportive of the overall printing process and, thus, were beyond the scope of the specific exception contained in R.C. 5739.01(E)(8). A non-exhaustive list of items utilized either before production had begun or during cleanup after production had taken place include:

1. Cylinder racks, blankets and crates, pallet trucks and maintenance stockroom materials, all utilized for storage purposes.
2. Various sweepers, vacuum cleaners and floor scrapers used to clean up the facility after production of printed material had taken place.
3. Monitoring equipment used as a diagnostic tool and to train new employees.
4. Waste oil storage tank for storage of used oil until the oil was sold to a scavenger company.
5. Kerosene used to clean cylinders when not in operation.
6. Salvage waste handling carts which hauled trash.
7. Waste paper handling equipment.
8. Trash baler motor starters used in the baling of waste paper.

---

[2] See *Pittsburgh-Des Moines Steel Co.* v. *Lindley* (1982), 1 Ohio St. 3d 15.

9. Mail packs used in the shipment of original engravings to a publisher or another printer.

Rather than examine the legitimacy of the relationship of the above items and others to the production and preparation for market and sale of printed matter, the majority has created a sweeping exception from the Ohio sales tax for much of the equipment, parts and supplies used by Dayton Press.

Until now, this court has not retreated from the holding in *National Tube Co.* v. *Glander* (1952), 157 Ohio St. 407 [47 O.O. 313], that exceptions are to be strictly construed against taxpayers in order to ensure equality in the burden of taxation. The majority today turns this holding on its head by liberally construing exceptions against the taxing authority.

For the foregoing reasons I respectfully dissent.

LOCHER, J., concurs in the foregoing dissenting opinion.